RANDALL S. NEWMAN (SBN 190547)
Attorney at Law
99 Wall St., Suite 3727
New York, NY 10005
212.797.3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Jose Maria DeCastro*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARIA DECASTRO,<br><br>   Plaintiff,<br><br> vs.<br><br>JOHN BRENDAN O'DEA,<br><br>   Defendant. | Case No. 25-cv-6567-NC<br><br>**Hon. Nathanael M. Cousins**<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER GRANTING DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**HEARING:**<br>Date: February 25, 2026<br>Time: 11:00 a.m.<br>Place: 280 South 1st St.<br>Courtroom 5 (4th Floor)<br>San Jose, CA 95113 |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 25, 2026, at 11:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 5 (4th Floor) of the Honorable Nathanael M. Cousins, United States Magistrate Judge, at the Robert F. Peckham Federal Courthouse, 280 South First Street, San Jose, California 95113, Plaintiff Jose Maria DeCastro ("Plaintiff") will and hereby does move the Court for an order granting Plaintiff's Motion for a default judgment against Defendant John Brendan O'Dea (the "Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2).

Plaintiff seeks entry of default judgment as to liability, together with declaratory and injunctive relief. Plaintiff does not seek an award of damages, costs or attorney's fees at this time. Because damages, costs and attorney's fees necessarily require evidentiary support and cannot be determined on the pleadings, Plaintiff respectfully requests that, following entry of default judgment, the Court permit submission of declarations and supporting evidence as to damages, costs and attorney's fees and, if necessary, conduct an inquest or other proceeding at the Court's discretion.

This Motion is made on the following grounds:

1.    Defendant was properly served with the Summons and complaint and failed to plead or otherwise defend this action within the time permitted by law;

2.    The Clerk of Court has entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) (ECF No. 14);

3.    The well-pleaded allegations of the Complaint, deemed admitted by virtue of Defendant's default, establish Defendant's liability on all causes of action alleged;

4.    Plaintiff will suffer prejudice absent entry of default judgment, as Defendant has not appeared in the litigation and Plaintiff has no other means of obtaining relief; and

5.    The factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), weigh strongly in favor of entry of default judgment.

**Notice and Motion for Order Granting Default Judgment**

1         This Motion is based upon this Notice of Motion, the accompanying Memorandum
2   of Points and Authorities, the pleadings and papers on file in this action, and such further
3   evidence and argument as may be presented at or before the hearing.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Notice and Motion for Order Granting Default Judgment**

**TABLE OF CONTENTS**

Contents

I.  STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

II.  INTRODUCTION ........................................................................... 2

III.  PROCEDURAL BACKGROUND ................................................................. 2

IV.  FACTUAL ALLEGATIONS IN COMPLAINT ...................................................... 3

A.  Defendant's Stream-Sniping and Copyright Abuse ....................................... 3

B.  Unauthorized Access and Pornographic Broadcast ....................................... 4

C.  Attribution of the Attack to Defendant ............................................... 5

D.  Procedural Posture ................................................................... 5

V.  LEGAL STANDARD GOVERNING DEFAULT ...................................................... 5

A.  Subject Matter Jurisdiction .......................................................... 6

B.  Personal Jurisdiction and Service of Process ......................................... 6

VI.  THE EITEL FACTORS STRONGLY FAVOR ENTRY OF DEFAULT JUDGMENT ........................... 7

A.  Plaintiff Will Be Prejudiced Absent Default Judgment ................................. 7

B.  Plaintiff's Claims Are Substantively Meritorious and the Complaint is Sufficiently Pleaded ............................................................................... 7

    i.  Stored Communications Act (18 U.S.C. § 2701) ..................................... 8

    ii.  Computer Fraud and Abuse Act (18 U.S.C. § 1030) ................................ 9

    iii.  DMCA § 512(f) - Knowing Material Misrepresentation ........................... 11

    iv.  Declaratory Relief Regarding Lack of Authorization and Fair Use .............. 12

    v.  Injunctive Relief .............................................................. 13

C.  The Amount of Money at Stake Does Not Weigh Against Default Judgment ................. 14

D.  There Is No Possibility of a Dispute Concerning Material Facts ....................... 15

E.  Defendant's Default Was Not the Result of Excusable Neglect .......................... 15

F.  The Policy Favoring Decisions on the Merits is Outweighed ............................ 16

Notice and Motion for Order Granting Default Judgment

VII. CONCLUSION AND REQUESTED RELIEF ........................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Notice and Motion for Order Granting Default Judgment**

# TABLE OF AUTHORITIES

## CASES

*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980)........................................................5

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ...........................13

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ................................. 6-7, 14, 15

*ENTTech Media Group LLC v. Okularity, Inc.*, 2:20-cv-06298-JWH-Ex, 2021 WL
    916307 (C.D. Cal. Mar. 10, 2021) ........................................................11

*In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ...........8

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ......................8

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) .....................10

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) .........................12

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ...................6

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) .........................8

## STATUTES

17 U.S.C. § 512(f).........................................................................................passim

18 U.S.C. § 1030..........................................................................................passim

18 U.S.C. § 2701..........................................................................................passim

18 U.S.C. § 2701(a) ...............................................................................................8

28 U.S.C. § 1331 ...................................................................................................6

28 U.S.C. § 1367(a) ...............................................................................................6

California Penal Code § 502(c)..........................................................................2, 8

## RULES

Federal Rule of Civil Procedure 4(f)(3)...............................................................6

Federal Rule of Civil Procedure 55(a)..............................................................i, 3

Federal Rule of Civil Procedure 55(b)(2) .........................................i, 1, 2, 16, 17

**Notice and Motion for Order Granting Default Judgment**

# I.       STATEMENT OF ISSUES TO BE DECIDED

1.       Whether, in light of Defendant's default and the well-pleaded allegations of the Complaint, Plaintiff is entitled to entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), including entry of judgment as to liability, declaratory relief, and narrowly tailored injunctive relief, with the determination of damages, costs and attorneys' fees reserved for a subsequent submission and proceeding.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## II. INTRODUCTION

Plaintiff Jose Maria DeCastro ("Plaintiff") respectfully moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and this Court's Order directing Plaintiff to file a motion for default judgment by January 17, 2026[1] (ECF No. 15). The Clerk entered default against Defendant John Brendan O'Dea ("Defendant") on October 10, 2025, and Defendant has never appeared, answered, or otherwise responded in this action (ECF No. 14).

Plaintiff seeks entry of default judgment pursuant to Rule 55(b)(2) only on Plaintiff's claims under the Stored Communications Act, 18 U.S.C. § 2701, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and 17 U.S.C. § 512(f), together with related declaratory and injunctive relief. Plaintiff does not seek default judgment at this time on the remaining claims asserted in the Complaint (Claim 3 (Lanham Act), Claim 4 (California Penal Code § 502(c)), and Claim 7 (Trespass to Chattels)), which arise from the same nucleus of operative facts and are duplicative of the relief sought herein and would not expand the relief available in this action.

Plaintiff seeks entry of default judgment as to liability on the claims identified above, together with declaratory and injunctive relief, and a determination that Plaintiff is entitled to recover attorneys' fees and costs pursuant to applicable statutes. Plaintiff respectfully requests that the Court defer the determination of damages and the amount of fees and costs to a subsequent prove-up proceeding or supplemental briefing, as the Court deems appropriate.

## III. PROCEDURAL BACKGROUND

Plaintiff filed the Complaint (the "Compl.") in this action on August 5, 2025 (ECF No. 1). The Complaint asserts claims arising from Defendant's unauthorized access to Plaintiff's online accounts, impersonation of Plaintiff, dissemination of explicit

---

[1] Because January 17, 2026 is a Saturday and January 19, 2026 is a federal holiday (Martin Luther King Jr. Day), the Motion is due on January 20, 2026.

**Notice and Motion for Order Granting Default Judgment**

pornographic content using Plaintiff's identity, and Defendant's submission of a knowingly false DMCA counter-notification.

On September 3, 2025, the Court entered an order authorizing alternative service on Defendant by email (ECF No. 9). Plaintiff subsequently served Defendant by email on the same date. (Proof of Service, ECF No. 11). Defendant's deadline to respond expired on September 24, 2025. Defendant failed to appear or respond in any manner.

On October 10, 2025, at Plaintiff's request, the Clerk of Court entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a) (ECF No. 14). To date, Defendant has not sought to set aside the default or otherwise participate in this action.

On October 29, 2024, the Court ordered Plaintiff to file a motion for default judgment by January 17, 2026 (ECF No. 15). This Motion follows that Order.

## IV. FACTUAL ALLEGATIONS IN COMPLAINT

Plaintiff is the owner and operator of the YouTube channel Delete Lawz, a monetized channel focused on constitutional rights, police accountability, and government transparency. (Compl. ¶¶ 1–2). Through his livestreams and videos, Plaintiff built a substantial subscriber base and derived income and goodwill from his online presence. (*Id.*)

Defendant, who operates online under the alias "Irish Demon," is a YouTube commentator who regularly targeted Plaintiff and other First Amendment auditors by rebroadcasting and mocking their content. (*Id.* ¶¶ 3–5).

### A. Defendant's Stream-Sniping and Copyright Abuse

On October 23, 2022, Defendant rebroadcast one of Plaintiff's livestreams in full, with minimal delay and minimal commentary, a practice commonly referred to as "stream-sniping." (*Id.* ¶¶ 21–22). The rebroadcast consisted largely of unedited footage taken directly from Plaintiff's livestream and was intended to divert viewers away from Plaintiff's channel. (*Id.*)

On November 15, 2022, Defendant again rebroadcast Plaintiff's livestream ("Infringing Video 2"). (*Id.* ¶ 23). During that broadcast, Defendant stated to his audience, "we're here to show you so you don't have to watch it over there," expressly admitting that

the purpose of the rebroadcast was to substitute for Plaintiff's original livestream. (*Id.* ¶ 24).

Plaintiff submitted DMCA takedown notices regarding the infringing rebroadcasts. (*Id.* ¶¶ 26, 32). On November 18, 2022, Defendant submitted a DMCA counter-notification under penalty of perjury, asserting that his use of Plaintiff's content was protected by fair use and that the takedown resulted from mistake or misidentification. (*Id.* ¶¶ 27-28).

Those representations were false. Defendant had expressly admitted during the broadcasts that his use was intended to replace Plaintiff's livestream, and he knowingly misrepresented the legality of his conduct in order to secure reinstatement of the infringing content. (*Id.*) Defendant also provided a false residential address in the counter-notification. (*Id.* ¶¶ 29-30).

## B. Unauthorized Access and Pornographic Broadcast

Defendant's conduct escalated from infringement to direct cyber intrusion. (*Id.*¶ 33). On or about November 22, 2024, while Plaintiff was asleep, Defendant gained unauthorized access to Plaintiff's StreamYard account using Plaintiff's login credentials, which Defendant obtained without authorization from one of Plaintiff's former associates. (*Id.* ¶¶ 33-34).

Using that unauthorized access, Defendant initiated a livestream that was broadcast directly to Plaintiff's official Delete Lawz YouTube channel. (*Id.* ¶ 34). Defendant streamed graphic pornographic content to Plaintiff's audience and posted the message "NEVER MESS WITH US> WE ALWAYS WIN," impersonating Plaintiff and intentionally humiliating him. (*Id.* ¶ 35).

As a result of the unauthorized broadcast, YouTube suspended Plaintiff's channel, disabling his ability to stream, upload content, or generate revenue for several days. (*Id.* ¶ 40).

The following day, Defendant attempted a second unauthorized broadcast using Plaintiff's StreamYard credentials, but Plaintiff had already changed his passwords, preventing the stream from going live. (*Id.* ¶¶ 36-37). Defendant later sent messages to

another YouTube creator acknowledging the failed attempt and attaching screenshots from his own StreamYard interface showing that it had been configured to stream to Plaintiff's YouTube channel. (*Id.* ¶ 38).

### C. Attribution of the Attack to Defendant

Following the attack, YouTube confirmed to Plaintiff that the pornographic broadcast originated from an external unauthorized user and later restored Plaintiff's channel. (*Id.* ¶¶ 42-43). After the incident, Plaintiff experienced a substantial decline in subscriber growth, engagement, and monetization. (*Id.* ¶ 50-53).

Independent reporting and witness statements further tied the attack to Defendant. Multiple individuals reported that Defendant admitted responsibility for the attack in private communications and provided screenshots of the login credentials used to access Plaintiff's account. (*Id.* ¶¶ 45-49).

### D. Procedural Posture

On August 5, 2025, Plaintiff commenced this action asserting claims under the Stored Communications Act, the Computer Fraud and Abuse Act, the Lanham Act, California Penal Code § 502, 17 U.S.C. § 512(f), trespass to chattels, and for declaratory relief. (*Id.* ¶¶ 55–112).

## V. LEGAL STANDARD GOVERNING DEFAULT

Default may be entered against a party who fails to plead or otherwise defend an action, and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, a court may, in its discretion, enter default judgment. Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors, known as the *Eitel* factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–

72 (9th Cir. 1986). In considering these factors, all factual allegations in the plaintiff's complaint are taken as true, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). When the damages claimed are not readily ascertainable from the pleadings and the record, a court may hold a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

### A.    Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States, including claims under the Stored Communications Act, 18 U.S.C. § 2701, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and 17 U.S.C. § 512(f).

To the extent the Complaint asserts additional claims not arising under federal law, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy. All claims arise from the same nucleus of operative facts, namely Defendant's unauthorized access to Plaintiff's online accounts, misuse of Plaintiff's content, and related misconduct.

Accordingly, this Court has subject matter jurisdiction over Plaintiff's federal claims and supplemental jurisdiction over any related non-federal claims asserted in the Complaint.

### B.    Personal Jurisdiction and Service of Process

This Court has personal jurisdiction over Defendant. Federal Rule of Civil Procedure 4 governs service of process and the exercise of personal jurisdiction in federal court. Where, as here, a defendant is served pursuant to Rule 4, the Court may exercise personal jurisdiction to the extent permitted by the Due Process Clause. See Fed. R. Civ. P. 4(k).

Defendant resides outside the United States. Accordingly, pursuant to Federal Rule of Civil Procedure 4(f)(3), an individual not within any judicial district of the United States may be served by any means not prohibited by international agreement, as ordered by the Court.

**Notice and Motion for Order Granting Default Judgment**

On September 3, 2025, Plaintiff filed an Ex Parte Application for an Order Authorizing Alternative Service via Email on Defendant. (ECF No. 9). The Court granted that application the same day. (ECF No. 10). In accordance with the Court's Order, Plaintiff served Defendant by email on September 3, 2025. (ECF No. 11).

Service pursuant to Rule 4(f)(3) is neither a last resort nor disfavored and is valid so long as it is reasonably calculated to provide notice and is not prohibited by international agreement. Defendant received actual notice of this action and has failed to appear, plead, or otherwise defend. Defendant was therefore properly served, and the Court may proceed to enter default judgment.

## VI. THE EITEL FACTORS STRONGLY FAVOR ENTRY OF DEFAULT JUDGMENT

### A. Plaintiff Will Be Prejudiced Absent Default Judgment

Under the first factor, the Court must determine whether Plaintiff will be prejudiced if the Court denies its motion for default judgment. *Eitel*, 782 F.2d at 1471-72. Absent entry of default judgment, Plaintiff has no means of obtaining relief. Defendant has abandoned this action entirely, leaving Plaintiff without any alternative avenue to vindicate his rights or recover damages.

### B. Plaintiff's Claims Are Substantively Meritorious and the Complaint is Sufficiently Pleaded

The second and third *Eitel* factors focus on the merits of Plaintiff's substantive claims and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471-72. In order for these factors to weigh in Plaintiff's favor, Plaintiff must assert claims upon which it may recover. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).

The Complaint pleads detailed and specific facts establishing Defendant's liability under the Stored Communications Act, the Computer Fraud and Abuse Act, the Lanham Act, California Penal Code § 502, the Digital Millennium Copyright Act, and related

claims for declaratory relief and trespass to chattels.[2]

Defendant's conduct, as alleged, includes unauthorized access to Plaintiff's StreamYard and YouTube accounts, dissemination of explicit content under Plaintiff's identity, and submission of a knowingly false DMCA counter-notification. These allegations establish liability as a matter of law.

### i.    Stored Communications Act (18 U.S.C. § 2701)

The admitted allegations establish Defendant's liability under the Stored Communications Act ("SCA"), 18 U.S.C. § 2701. The SCA imposes civil liability on any person who intentionally accesses without authorization a facility through which an electronic communication service is provided, or intentionally exceeds authorized access, and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage. 18 U.S.C. § 2701(a).

To state a claim under § 2701, a plaintiff must allege that: (1) the defendant intentionally accessed a facility through which an electronic communication service is provided; (2) the access was without authorization or exceeded authorized access; and (3) the defendant thereby obtained, altered, or prevented authorized access to an electronic communication in electronic storage. *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 879–80 (9th Cir. 2002). The well-pleaded allegations, deemed admitted by Defendant's default, satisfy each of these elements.

Plaintiff alleges that Defendant gained unauthorized access to Plaintiff's StreamYard account, a web-based platform that provides electronic communication services by enabling users to create, manage, store, and transmit livestreams and associated communications. (Compl. ¶¶ 56-66). Courts have held that web-based platforms and servers that host and store user communications constitute "facilities" within the meaning of the SCA. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075–76 (9th Cir. 2004).

---

[2] As discussed above, Plaintiff does not seek default judgment at this time on Claim 3 (Lanham Act), Claim 4 (California Penal Code § 502(c)) and Claim 7 (Trespass to Chattels).

**Notice and Motion for Order Granting Default Judgment**

Plaintiff further alleges that Defendant accessed Plaintiff's StreamYard account without authorization by using login credentials obtained without Plaintiff's permission while Plaintiff was unaware of the intrusion. (Compl. ¶¶ 58-60). Access to an electronic communications facility using credentials obtained without authorization constitutes access "without authorization" for purposes of § 2701. *Theofel*, 359 F.3d at 1073–74.

As a result of Defendant's unauthorized access, Defendant obtained and used electronic communications stored within Plaintiff's StreamYard account and used the account's broadcasting functionality to transmit pornographic content through Plaintiff's YouTube channel, thereby preventing Plaintiff's authorized access to and control over his own stored communications. (Compl. ¶¶ 59-60). Communications stored on servers incident to transmission or user access fall within the SCA's definition of "electronic storage." *Theofel*, 359 F.3d at 1075.

Plaintiff further alleges that Defendant used the unauthorized access to broadcast pornographic content while impersonating Plaintiff, resulting in the temporary suspension of Plaintiff's YouTube channel and interference with Plaintiff's ability to access, manage, and exploit his stored communications. (Compl. ¶¶ 61-62). Preventing a user from accessing or controlling stored electronic communications constitutes a violation of § 2701.

Because Defendant intentionally accessed a facility through which an electronic communication service is provided without authorization and thereby obtained and prevented authorized access to electronic communications in storage, Defendant is liable under 18 U.S.C. § 2701. Plaintiff is therefore entitled to entry of default judgment on this claim.

### ii.     Computer Fraud and Abuse Act (18 U.S.C. § 1030)

The admitted allegations also establish Defendant's liability under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The CFAA provides a civil cause of action against any person who intentionally accesses a protected computer without authorization or exceeds authorized access and thereby causes damage or loss. 18 U.S.C. §§ 1030(a)(2)(C), (a)(5)(C), (g).

9

To state a civil claim under the CFAA, a plaintiff must allege that: (1) the defendant intentionally accessed a protected computer; (2) the access was without authorization or exceeded authorized access; (3) the defendant thereby obtained information, caused damage, or caused loss; and (4) the conduct resulted in a loss of at least $5,000 in value during a one-year period. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). The well-pleaded allegations, deemed admitted by Defendant's default, satisfy each of these requirements.

Plaintiff alleges that Defendant intentionally accessed Plaintiff's StreamYard account and associated cloud-based systems, which constitute "protected computers" within the meaning of the CFAA because they are used in and affect interstate and foreign commerce. (Compl. ¶¶ 70-74).

Plaintiff further alleges that Defendant's access was without authorization, as Defendant obtained and used login credentials without Plaintiff's permission and accessed the account while Plaintiff was unaware of the intrusion. (Compl. ¶¶ 34-41).

As a result of Defendant's unauthorized access, Defendant obtained information from Plaintiff's account and used that access to broadcast pornographic content to Plaintiff's YouTube channel, interfere with Plaintiff's livestream, and disrupt Plaintiff's exclusive control over his account. (Compl. ¶¶ 34-41, 71-74). Such conduct satisfies the CFAA's requirement that the defendant obtain information or cause damage through unauthorized access.

Plaintiff also alleges that Defendant's conduct caused "loss" exceeding $5,000 during a one-year period within the meaning of 18 U.S.C. § 1030(e)(11). (Compl. ¶ 73). Defendant's unauthorized access and interference resulted in a disruption of Plaintiff's business operations, loss of control over Plaintiff's livestream and channel, interruption of Plaintiff's ability to exploit and monetize his content, and lost business opportunities. (Compl. ¶¶ 40, 51-52, 73-74).

Because Defendant intentionally accessed a protected computer without authorization and caused loss exceeding $5,000 during a one-year period, Defendant is

liable under the CFAA. Plaintiff is therefore entitled to entry of default judgment on this claim.

### iii. DMCA § 512(f) - Knowing Material Misrepresentation

The admitted allegations also establish Defendant's liability under 17 U.S.C. § 512(f). Section 512(f) imposes liability on any person who knowingly materially misrepresents that material was removed or disabled by mistake or misidentification, where such misrepresentation causes injury to the alleged infringer. 17 U.S.C. § 512(f).

In order to state a claim for violation of § 512(f), a plaintiff must allege facts to show that (1) the defendants knowingly and materially misrepresented that the material was removed by mistake; (2) the service provider relied on that misrepresentation; and (3) the plaintiff was injured as a result. *See ENTTech Media Group LLC v. Okularity, Inc.*, 2:20-cv-06298-JWH-Ex, 2021 WL 916307, at *4 (C.D. Cal. Mar. 10, 2021). The well-pleaded allegations, deemed admitted by Defendant's default, satisfy each of these elements.

Plaintiff alleges that Defendant submitted a DMCA counter-notification to YouTube falsely asserting that Defendant's use of Plaintiff's copyrighted video content constituted non-infringing fair use. (Compl. ¶¶ 95–99.) A counter-notification asserting lawful use may give rise to liability under § 512(f) where the assertion is knowingly false or made with willful blindness to the absence of fair use.

Plaintiff further alleges that Defendant knew the fair-use assertion was false at the time it was made. Defendant had publicly admitted that his use of Plaintiff's videos served as a substitute for the original works. (Compl. ¶¶ 24-28). Allegations that a defendant understood the market-substitution effect of the challenged use and nevertheless asserted fair use are sufficient to plead knowing misrepresentation under § 512(f).

Plaintiff alleges that Defendant's misrepresentation caused YouTube to reinstate infringing content and forced Plaintiff to initiate litigation to protect his rights, resulting in economic harm, lost control over copyrighted works, and the incurrence of attorneys' fees and costs. (Compl. ¶¶ 99–101). Such injuries are cognizable under § 512(f).

**Notice and Motion for Order Granting Default Judgment**

Because Defendant knowingly made a material misrepresentation in a DMCA counter-notification and Plaintiff suffered injury as a result, Defendant is liable under 17 U.S.C. § 512(f). Plaintiff is therefore entitled to default judgment on this claim.

### iv. Declaratory Relief Regarding Lack of Authorization and Fair Use

An actual and justiciable controversy exists between the parties concerning Defendant's asserted right to use Plaintiff's copyrighted audiovisual works and Defendant's claim that such use constituted lawful fair use. Defendant affirmatively asserted that his use of Plaintiff's videos was non-infringing fair use in a DMCA counter-notification submitted to YouTube, resulting in the reinstatement of infringing content and forcing Plaintiff to initiate this action. (Compl. ¶¶ 94–101).

The Declaratory Judgment Act authorizes this Court to "declare the rights and other legal relations of any interested party" where an actual controversy exists. 28 U.S.C. § 2201(a). Declaratory relief is particularly appropriate where, as here, it serves to resolve uncertainty regarding the legality of Defendant's conduct and to prevent ongoing or future harm. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-128 (2007).

Plaintiff seeks a declaration that Defendant lacked any license, authorization, or permission to reproduce, distribute, publicly perform, or publicly display Plaintiff's copyrighted works, and that Defendant's use of those works was not fair use within the meaning of 17 U.S.C. § 107. Defendant's own admissions establish that his use of Plaintiff's videos served as a market substitute for the original works. (Compl. ¶¶ 24, 28). Such use is inconsistent with fair use and materially misrepresents lawful entitlement to use Plaintiff's works.

Plaintiff does not seek, and this claim does not request, a determination of copyright infringement or an award of infringement damages. Rather, Plaintiff seeks declaratory relief limited to the absence of authorization, the absence of fair use, and the falsity of Defendant's asserted lawful entitlement to use Plaintiff's works, all of which are independent of copyright registration and properly before the Court. Defendant's submission of a sworn DMCA counter-notification asserting lawful fair use constitutes a

**Notice and Motion for Order Granting Default Judgment**

concrete, adverse legal position sufficient to establish an actual controversy warranting declaratory relief. Accordingly, Plaintiff is entitled to declaratory relief resolving these issues in Plaintiff's favor.

### v. Injunctive Relief

Plaintiff seeks narrow, permanent injunctive relief limited to the specific videos identified in the Complaint. Plaintiff does not seek a broad conduct injunction or relief untethered to the pleaded facts.

A plaintiff seeking permanent injunctive relief must demonstrate (1) actual success on the merits, (2) irreparable injury, (3) inadequacy of remedies at law, (4) that the balance of hardships favors equitable relief, and (5) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

As alleged in the Complaint, Defendant reproduced and rebroadcast Plaintiff's livestreams on October 23, 2022 and November 15, 2022 for the express purpose of diverting viewers away from Plaintiff's channel and substituting Defendant's rebroadcasts for Plaintiff's original content. (Compl. ¶¶ 21, 23). During the November 15, 2022 broadcast, Defendant expressly admitted that the rebroadcast was intended so viewers would not need to watch Plaintiff's original livestream. (Compl. ¶ 24).

The two videos for which Plaintiff seeks injunctive relief are specifically identified in the Complaint at the following URLs:

> (1) Infringing Video 1 (October 23, 2022 rebroadcast),
> https://www.youtube.com/watch?v=wTgfIBnDvfw (Compl. ¶ 21 FN 1);
> (2) Infringing Video 2 (November 15, 2022 rebroadcast),
> https://www.youtube.com/watch?v=hGUx9FC3Eo4 (Compl ¶ 23 FN 2).

Plaintiff has suffered and will continue to suffer irreparable harm absent injunctive relief, including loss of control over Plaintiff's audiovisual works and interference with

Plaintiff's exclusive rights under the Copyright Act. These harms are difficult to quantify and are not fully compensable through monetary damages alone.

Legal remedies are inadequate because Defendant's continued use of Plaintiff's videos deprives Plaintiff of the exclusive rights afforded by the Copyright Act, including the rights to reproduce, distribute, and publicly perform the works.

The balance of hardships overwhelmingly favors Plaintiff. The requested injunction is narrowly limited to the two videos identified in the Complaint and merely requires Defendant to refrain from using content he has no lawful right to exploit. Defendant has no legitimate interest in continuing to reproduce or publicly display the identified videos.

The public interest favors injunctive relief because enforcing copyright protections promotes creative expression and preserves the incentives underlying the Copyright Act.

Accordingly, Plaintiff respectfully requests that the Court enter a permanent injunction providing that Defendant is enjoined from reproducing, distributing, publicly performing, or publicly displaying the two videos identified in the Complaint, namely: (a) the October 23, 2022 rebroadcast located at: https://www.youtube.com/watch?v=wTgfIBnDvfw; and (b) the November 15, 2022 rebroadcast located at: https://www.youtube.com/watch?v=hGUx9FC3Eo4.

This limited injunctive relief is necessary to prevent further infringement and to enforce Plaintiff's exclusive rights under the Copyright Act.

## C. The Amount of Money at Stake Does Not Weigh Against Default Judgment

The fourth *Eitel* factor, the amount of money at stake, does not weigh against entry of default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). At this stage, Plaintiff does not seek an award of monetary damages. Plaintiff seeks entry of default judgment as to liability, declaratory relief, narrowly tailored injunctive relief, and a determination of entitlement to attorneys' fees and costs, with the amount of damages and fees to be determined through subsequent prove-up proceedings or supplemental briefing.

Notice and Motion for Order Granting Default Judgment

1     Here, Plaintiff does not seek an award of monetary damages at this stage. Plaintiff
2 seeks entry of default judgment as to liability, declaratory relief, and narrowly tailored
3 injunctive relief, with the determination of damages and attorneys' fees expressly reserved
4 for a subsequent proceeding. Because no specific monetary award is presently before the
5 Court, there is no risk of an excessive or unwarranted judgment.
6     Accordingly, the amount of money at stake does not weigh against entry of default
7 judgment.

### D.    There Is No Possibility of a Dispute Concerning Material Facts

9     The fifth *Eitel* factor, whether there is a possibility of dispute concerning material
10 facts, strongly favors entry of default judgment. Upon entry of default, the well-pleaded
11 factual allegations of the Complaint are deemed admitted. *See Eitel v. McCool*, 782 F.2d
12 1470, 1471–72 (9th Cir. 1986). Defendant has never appeared, answered, or otherwise
13 responded to the Complaint, and has offered no evidence or argument disputing Plaintiff's
14 allegations. As a result, there is no indication that any material facts are in dispute.

15     Moreover, the Complaint pleads specific, detailed factual allegations concerning
16 Defendant's conduct, including the unauthorized access to Plaintiff's accounts, the
17 rebroadcasting of Plaintiff's content, and Defendant's knowing submission of a false
18 DMCA counter-notification. Those allegations are not conclusory and are supported by
19 concrete events, dates, and statements attributed to Defendant. In the absence of any
20 response from Defendant, there is no basis to conclude that a genuine dispute of material
21 fact exists. Accordingly, this factor weighs strongly in favor of default judgment.

### E.    Defendant's Default Was Not the Result of Excusable Neglect

23     The sixth *Eitel* factor, whether the default was the result of excusable neglect, also
24 weighs in favor of entry of default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471–
25 72 (9th Cir. 1986). Defendant was properly served with the Complaint pursuant to the
26 Court's Order authorizing alternative service, received actual notice of this action, and
27 nevertheless failed to appear, answer, or otherwise respond within the time permitted by
28 law.

**Notice and Motion for Order Granting Default Judgment**

1  Nothing in the record suggests that Defendant's failure to participate in this litigation

2  was the result of mistake, inadvertence, or excusable neglect. To the contrary, Defendant's

3  complete failure to respond, despite proper service and actual notice, supports the inference

4  that Defendant has intentionally chosen not to defend this action. Courts routinely find that

5  this factor weighs in favor of default judgment where, as here, a defendant has been

6  properly served and has failed to take any action to defend the case. Accordingly, this factor

7  supports entry of default judgment.

8  **F.    The Policy Favoring Decisions on the Merits is Outweighed**

9  The seventh *Eitel* factor considers the strong policy favoring decisions on the merits.

10  While federal courts generally prefer to resolve cases on their merits, that policy does not

11  preclude entry of default judgment where a defendant's own failure to participate in the

12  litigation makes a decision on the merits impracticable. *See Eitel v. McCool*, 782 F.2d 1470,

13  1472 (9th Cir. 1986).

14  Here, Defendant has been properly served, received actual notice of this action, and

15  nevertheless failed to appear, answer, or otherwise defend. As a result, a decision on the

16  merits is not possible absent Defendant's participation. Under these circumstances, entry

17  of default judgment is appropriate and consistent with the Federal Rules of Civil Procedure,

18  which expressly authorize default judgment when a defendant fails to plead or otherwise

19  defend. See Fed. R. Civ. P. 55.

20  Accordingly, while the policy favoring decisions on the merits is always considered,

21  it does not weigh against entry of default judgment in this case.

22  In sum, the *Eitel* factors weigh strongly in favor of entry of default judgment.

23  Defendant was properly served, failed to appear, and the well-pleaded allegations of the

24  Complaint establish Defendant's liability on the claims for which Plaintiff seeks judgment.

25  Plaintiff therefore respectfully requests that the Court enter default judgment pursuant to

26  Federal Rule of Civil Procedure 55(b)(2).

27

28

**Notice and Motion for Order Granting Default Judgment**

## VII. CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and enter judgment in Plaintiff's favor as follows:

### A. Entry of Default Judgment as to Liability

Enter default judgment as to liability in favor of Plaintiff and against Defendant a on Plaintiff's claims under: the Stored Communications Act, 18 U.S.C. § 2701; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and 17 U.S.C. § 512(f).

### B. Declaratory Relief

Enter declaratory relief declaring that: (1) Defendant lacked any license, authorization, or permission to use Plaintiff's audiovisual works identified in the Complaint; and (2) Defendant's use of those works was not fair use within the meaning of 17 U.S.C. § 107.

### C. Permanent Injunctive Relief

Enter permanent injunctive relief narrowly limited to the two videos identified in the Complaint, enjoining Defendant from: reproducing, distributing, publicly performing, or publicly displaying the October 23, 2022 and November 15, 2022 rebroadcasts identified by URL in the Complaint.

### D. Damages, Costs and Attorney's Fees Reserved

Determine that Plaintiff is entitled to recover damages, attorney's fees, and costs as authorized by law, and defer determination of the amount of damages, fees, and costs to a subsequent prove-up proceeding or supplemental briefing, as the Court deems appropriate.

### E. Further Relief

Grant such other and further relief as the Court deems just and proper.

Dated:  January 20, 2026

/s/ Randall S. Newman
Randall S. Newman, Esq. (SBN 190547)
99 Wall Street, Suite 3727
New York, NY 10005
(212) 797-3735
rsn@randallnewman.net

*Attorney for Plaintiff,*
 *Jose Maria DeCastro*

**Notice and Motion for Order Granting Default Judgment**