UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE MARIA DECASTRO,
Plaintiff,

v.

JOHN BRENDAN O'DEA,
Defendant.

Case No. 25-cv-06567-NC

**ORDER REQUESTING REASSIGNMENT TO A DISTRICT COURT JUDGE; REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR DEFAULT JUDGMENT**

Re: ECF 16, 27

On August 5, 2025, Plaintiff Jose DeCastro, who operates a YouTube channel, filed a complaint alleging that John O'Dea, known online as "Irish Demon," attacked his channel and then used it to broadcast graphic pornography, damaging Plaintiff's reputation and livelihood. ECF 1, Compl. Now presented to the Court is Plaintiff's motion for entry of a default judgment against Defendant O'Dea. ECF 16.

## I. BACKGROUND

### A. Factual Background

Plaintiff alleges as follows. Plaintiff is a prominent digital activist focused on constitutional rights, police accountability, and government transparency. Compl. ¶ 2. Plaintiff operates a YouTube channel called Delete Lawz, where he has a large online following. *Id.* Defendant built his own brand reacting to Plaintiff's YouTube channel to ridicule and harass Plaintiff. *Id.* ¶ 3.

Specifically, on October 23 and November 15, 2022, Defendant reproduced Plaintiff's livestream in real time (the first and second infringing videos). *Id.* ¶¶ 21, 23. Defendant deliberately did this to draw viewers from Plaintiff's channel. *Id.* ¶ 24. Plaintiff filed a Digital Millennium Copyright Act (DMCA) takedown notice regarding the second infringing video. *Id.* ¶ 26. In response, Defendant filed a counter notice and claimed his video fell under the "fair use" provision. *Id.* ¶ 27. YouTube reinstated the second infringing video and denied Plaintiff further recourse absent litigation. *Id.* ¶ 31. Plaintiff filed a takedown notice for the first infringing video, which YouTube has not taken down. *Id.* ¶ 32.

Plaintiff utilized StreamYard, "a web-based platform through which electronic communications are managed and stored for purposes of live broadcasting and streaming to third-party services such as YouTube," which "was integrated with his monetized YouTube channel and contained session data, and authentication tokens used to control the livestream content and access privileges." *Id.* ¶ 57. On November 22, 2024, Defendant utilized Plaintiff's StreamYard login credentials, without his authorization, and initiated a broadcast from Plaintiff's channel. *Id.* ¶¶ 33–34. Defendant broadcasted graphic pornography with the message "NEVER MESS WITH US> [sic] WE ALWAYS WIN." *Id.* ¶ 35. Defendant attempted to initiate a second unauthorized livestream on Plaintiff's channel, but Plaintiff had changed his login credentials. *Id.* ¶ 36.

Following Defendant's attack, YouTube suspended Plaintiff's channel, affecting Plaintiff's subscriber growth and monetization. *Id.* ¶ 40. Later, YouTube reinstated Plaintiff's channel. *Id.* ¶ 42. As a result of the attack, Plaintiff laid off his editors and shutdown planned projects. *Id.* ¶ 51.

Plaintiff asserts seven causes of action as follows: (1) violations of the Stored Communications Act (SCA); (2) violations of the Computer Fraud and Abuse Act; (3) False Designation of Origin; (4) violations of the California Comprehensive Computer Data Access and Fraud Act; (5) misrepresentation under the DMCA; (6) declaration of copyright infringement; and (7) trespass to chattels.

United States District Court
Northern District of California

### B. Procedural Background

After Defendant did not respond to the Complaint, the Clerk entered default against Defendant on October 10, 2025. ECF 14. On January 20, 2026, Plaintiff moved for default judgment. ECF 16. The motion requests entry of default against Defendant as to liability and declaratory and injunctive relief. *Id.* Plaintiff submitted a supplemental brief regarding damages, attorney's fees, and costs. ECF 27. The supplemental brief also stated that Plaintiff no longer seeks default judgment on the Computer Fraud and Abuse Act claim, but only as to his SCA and DMCA claims. *Id.*

Defendant has not filed an appearance in the case or responded to the Complaint or motion for default judgment in any way. The Court held a public hearing on the motion for default judgment on February 25, 2026, from the courtroom and by Zoom video. Defendant did not appear on video or in person in the courtroom and has not filed any response indicating that he intends to defend against the suit.

## II. REQUEST FOR CASE ASSIGNMENT TO A DISTRICT COURT JUDGE

Upon the "consent of the parties" a United States Magistrate Judge may conduct all proceedings in a civil case and order the entry of judgment. 28 U.S.C. § 636(c)(1). In this case, however, not all parties have consented to the jurisdiction of a magistrate judge. Defendant has not appeared and so has not consented. The Clerk of the Court is therefore requested to reassign this case to a United States District Court Judge.

The remainder of this Order is a recommendation to the District Court Judge under Fed. R. Civ. P. 72(b). Plaintiff is ordered to serve this Order on the Defendant and file proof of service. Within 14 days after being served with a copy of this recommended disposition, any party may file and serve specific written objections to this Order, directed to the newly-assigned District Court Judge. Fed. R. Civ. P. 72(b)(2).

## III. RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR DEFAULT JUDGMENT

Next, I recommend the District Court Judge grant in part and deny in part Plaintiff's motion for default judgment against Defendant with the remedies recommended below.

"The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); Fed. R. Civ. P. 55(b). In making its determination a court should consider: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The Court also must check that it has jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–918 (9th Cir. 1987).

**A. Jurisdiction**

As a preliminary matter, I find that the Court has federal subject matter jurisdiction under the "federal question" statute, 28 U.S.C. § 1331, and supplemental jurisdiction over the California state law claims under 28 U.S.C. § 1367(a).

The Court also has personal jurisdiction over Defendant because he committed an intentional act, aimed at a California resident, which caused harm he likely knew would be suffered in California. *Levi Strauss & Co. v. J. Barbour & Sons Ltd.*, No. 3:18-cv-03540-WHO, 2019 WL 1117533, at *4 (N.D. Cal. Mar. 11, 2019).

Also, I find that service of process was proper, and that Defendant has actual knowledge of the case and Plaintiff's motion for default judgment. And even further notice will be provided to Defendant before Judgment because the Court is requiring service of this Order on Defendant. Defendant thus will have a further opportunity to participate and object.

**B. *Eitel* Factors**

Considering the possibility of prejudice to Plaintiff if no relief is granted, the merits of the claims, sufficiency of the complaint, moderate sum of money at stake, and no

United States District Court
Northern District of California

apparent disputes of fact or excusable neglect, these *Eitel* factors favor default judgment as to Plaintiff's DMCA claim, but not his SCA claim, as discussed below:

***i. Possibility of Prejudice***

The first *Eitel* factor considers the possibility of prejudice to Plaintiff if default judgment is not entered. *Reiffer v. ATTN.LIVE LLC*, No. 22-cv-03674-RS, 2023 WL 2775150, at *2 (N.D. Cal. Apr. 3, 2023). Default judgment is appropriate where its denial would leave plaintiff "without other recourse for recovery." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. Oct. 28, 2010). Here, because Plaintiff has demonstrated a meritorious claim—see Section B.2 below—Plaintiff is entitled to a proper remedy. If default judgment is denied, Plaintiff would be left without this proper remedy because Defendant has failed to defend the action. Accordingly, the Court finds that this factor weighs in favor of default judgment.

***ii. Merits of Claim & Sufficiency of Complaint***

These two factors weigh partially in favor of default judgment because Plaintiff has sufficiently alleged Defendant submitted a knowingly false DMCA Counter-Notification, but has failed to allege that Defendant accessed an electronic communication in electronic storage. Compl., ¶¶ 57–58, 96–97. "Under an Eitel analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1048. Taken together, these factors require plaintiff's allegations to "state a claim on which the [plaintiff] may recover." *Id.* (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). The Court will analyze each cause of action in turn.

***1. Plaintiff Fails to State a Claim Under the SCA***

The SCA provides a cause of action against a person who "intentionally accesses without authorization a facility through which an electronic communication service is provided" and "thereby obtains, alters, or prevents unauthorized access to a wire or electronic communication while it is in electronic storage in such a system." 18 U.S.C. § 2701(a). To state a claim under the SCA, Plaintiff must allege that Defendant "(1)

gained unauthorized access to a 'facility' where it (2) accessed an electronic communication in 'electronic storage.'" *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 627 (N.D. Cal. 2021) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020)). An electronic communication is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). "Electronic storage is defined as either the "temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

Plaintiff has not stated a claim under the SCA. He satisfies the first element by alleging that Defendant accessed Plaintiff's StreamYard account without authorization. Compl., ¶ 34. As to the second element, Plaintiff alleges Defendant used Plaintiff's StreamYard to "initiate[] a broadcast that was streamed directly to Plaintiff's official YouTube channel." Compl., ¶ 34. Defendant created a contemporaneous video, and did not access an electronic communication in electronic storage. *Calhoun*, 526 F. Supp. 3d at 627; *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1042 (N.D. Cal. 2014) (emphasis in original) ("[T]he SCA protects *stored* communications, whether in temporary or backup storage, not contemporaneous communications in transit from sender to recipient."). Accordingly, Plaintiff has failed to state a claim under the SCA.

#### ***2. Plaintiff States a Claim for Misrepresentation Under the DMCA***

To state a claim for misrepresentation under the DMCA, a plaintiff must allege facts plausibly showing (1) that the defendant knowingly and materially misrepresented that its accused material was removed or disabled by mistake or misidentification; (2) the internet service provider relied on the misrepresentation in replacing the removed material or ceasing to disable access to it; and (3) the plaintiff was injured as a result. *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015). Whether a misrepresentation was

made "knowingly" is assessed against a subjective standard; it requires a showing that the defendant had "some actual knowledge" of the misrepresentation and did not possess a good faith belief that the material was removed by mistake or misidentification. *See Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004); *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 44 (S.D.N.Y. 2017) (same subjective standard that applies to takedown notices also applies to counter-notices).

Plaintiff has sufficiently stated a claim for misrepresentation under the DMCA. He alleges that Defendant submitted a counter-notice, falsely asserting that his use of Plaintiff's copyrighted video constituted non-infringing fair use. Compl., ¶¶ 95–99. Plaintiff's allegations, taken as true, establish that Defendant re-broadcasted all or long stretches of Plaintiff's livestreams with minimal reaction or other transformation, for his own monetization. *Id.* ¶¶ 21, 23–25. Defendant did so knowingly—he stated during the re-broadcasting that he was doing so viewers would not have to watch it on Plaintiff's channel, thus depriving him of viewership. *Id.* ¶ 24. In response to Defendant's counter-notice, YouTube reinstated one of the infringing videos, refused to take down the other infringing video, and denied Plaintiff recourse absent litigation. *Id.* ¶¶ 31–32. Lastly, Plaintiff alleges he was injured as a result. *Id.* ¶¶ 52–53.

***iii. Sum of Money***

The fourth factor weighs the amount of money at stake against the seriousness of the defendant's specific misconduct, to which the monetary sum should be tailored. *See Stockfood Am., Inc. v. Sequoia Wholesale Florist, Inc.*, No. 20-cv-03507-DMR (JD), 2021 WL 4597080, at *4 (N.D. Cal. June 22, 2021), *report and recommendation adopted*, 2021 WL 4595128 (N.D. Cal. Oct. 6, 2021).

Here, as further discussed below in Section C, Plaintiff has demonstrated that his request for damages is tailored to Defendant's specific misconduct.

***iv. Possibility of Dispute as to Material Facts***

A defendant's failure to appear supports an inference of a lack of dispute as to material facts. *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*, No. 13-cv-05201-SC, 2014

WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014). Defendant has failed to appear here, so this factor weighs in favor of granting default judgment. Moreover, once the Clerk entered default on Defendant, this Court accepts Plaintiff's allegations as true. *See HICA Educ. Loan Corp. v. Warne*, No. 11-cv-04287-LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012).

***v. Excusable Neglect***

The sixth factor weighs in favor of default judgment when the complaint and the motion for default judgment are properly served on the defendant. *Stockfood*, 2021 WL 4597080, at *4. Such is the case here, so this factor weighs in favor of default judgment.

***vi. Policy in Favor of Decisions on the Merits***

The Federal Rules of Civil Procedure strongly favor a decision on the merits over default judgment. *Khraibut v. Chahal*, No. 15-cv-04463-CRB, 2021 WL 1164940, at *16 (N.D. Cal. Mar. 26, 2021). However, this factor is not dispositive. *Stockfood*, 2021 WL 4597080, at *5. Here, although a decision on the merits is favored, Defendant's failure to appear has made doing so impossible. As a result, this factor is insufficient to prevent default judgment.

**C. Remedies**

Because the Court concludes that default judgment is warranted as to Plaintiff's DMCA claim, it now considers Plaintiff's request for relief. Plaintiff requests (a) statutory damages of $1,000 under the SCA; (b) taxable costs of $405; and (c) declaratory and injunctive relief. ECF 27 at 2.

***i. Statutory Damages and Taxable Costs***

Because the Court recommends finding that Plaintiff has failed to state a claim under the SCA, the Court recommends that Plaintiff is not awarded $1,000 statutory damages. Plaintiff does not seek statutory damages under the DMCA. ECF 27 at 2.

The Court recommends granting Plaintiff's request for taxable costs of $405 to compensate him for the filing fee incurred in commencing this action. *See Joe Hand Promotions Inc. v. Piacente*, No. 10-cv-3429-CW-JCS, 2011 WL 2111467, at *9 (N.D.

Cal. Apr. 11, 2011), *report and recommendation adopted sub nom. Joe Hand Promotions, Inc. v. Picante*, No. 10-cv-3429-CW, 2011 WL 2160631 (N.D. Cal. May 26, 2011) (awarding court filing fees).

***ii. Declaratory Relief***

The Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." *Round Hill Cellars v. Lolonis Winery*, No. 11-cv-757-JSW (EDL), 2011 WL 6961333, at *3 (N.D. Cal. Dec. 9, 2011) *report and recommendation adopted*, 2012 WL 33247 (N.D. Cal. Jan. 6, 2012) (citing *McGraw–Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339 (9th Cir. 1966)).

Plaintiff alleges that Defendant infringed his copyrighted videos and that Defendant submitted fraudulent DMCA counter-notifications to YouTube. Compl., ¶¶ 21, 23, 27, 31. Plaintiff seeks declaratory relief as follows: "The Court declares that Defendant had no lawful authorization to reproduce, rebroadcast, or publicly perform Plaintiff's audiovisual works as alleged in the Complaint, and that Defendant's use of those works does not constitute fair use under 17 U.S.C. § 107." ECF 27-1 at 2.

The Court recommends granting Plaintiff's request for declaratory relief because it will clarify the invalidity of Defendant's claims of fair use. *See Ducky Ltd. v. Iviliia Millionic IT SP. Z O.O.*, No. 24-cv-02268-PHK, 2026 WL 1083389, at *7 (N.D. Cal. Mar. 20, 2026), *report and recommendation adopted*, No. 5:24-cv-02268-BLF, 2026 WL 1081199 (N.D. Cal. Apr. 20, 2026).

***iii. Injunctive Relief***

Injunctive relief "is a precise tool to fix a precise injury," and "should be 'narrowly tailored' to remedy the specific harm a plaintiff has identified 'rather than to enjoin all possible breaches of the law.'" *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-cv-07071-SI (SVK), 2022 WL 2289067, at *17 (N.D. Cal. Mar. 28, 2022) (internal quotation omitted), *report and recommendation adopted*, No. 19-cv-07071-SI, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022). Rule 65(d) "instructs courts to state the terms of the injunction specifically and to 'describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'" *Id.* (citing Fed. R. Civ. P. 65(d)(1)(B)–(C)).

Plaintiff seeks injunctive relief as follows: "Defendant, and all persons acting in concert or participation with him, are permanently enjoined from reproducing, distributing, publicly performing, or publicly displaying the following videos identified in the Complaint: the October 23, 2022 rebroadcast located at https://www.youtube.com/watch?v=wTgfIBnDvfw; and the November 15, 2022 rebroadcast located at https://www.youtube.com/watch?v=hGUx9FC3Eo4." ECF 27-1 at 2.

The Copyright Act authorizes "temporary and final injunctions" on such terms as the Court may deem reasonable "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Additionally, courts may order destruction of unauthorized copies of copyrighted works. *Id.* § 503(b). "According to well-established principles of equity," to obtain a permanent injunction a plaintiff must show that it meets four criteria: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court finds that Plaintiff has established that all four factors are satisfied and

United States District Court
Northern District of California

recommends granting a permanent injunction. First, Plaintiff alleges that he is a prominent digital activist and commentator and "[t]hrough his livestreams, videos, and public appearances," has created a substantial online following. Compl., ¶ 2. Plaintiff alleges that Defendant's conduct has harmed Plaintiff's business and reputation. *Id.* ¶ 51; *see generally, e.g.*, *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 949 (N.D. Cal. 2009) (finding irreparable injury where infringement harmed the competitive position and market share of the copyrighted work), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

Second, the record suggests that without a permanent injunction, Defendant will likely continue his infringement, exposing Plaintiff to further injury and requiring repeated lawsuits for ongoing infringement. Indeed, in failing to appear to appear and defend this action, Defendant has given no indication that he will respond to Plaintiff's allegations, much less cease his infringing activities. *See Michael Grecco Prods., Inc. v. 8 Decimal Cap. Mgmt., LLC*, No. 20-cv-07466-HSG-TSH, 2021 WL 2534567, at *6 (N.D. Cal. June 1, 2021) ("Monetary damages are not sufficient to compensate [plaintiff] for this injury because it would be forced to bring repeated lawsuits to recover for ongoing infringement."), *report and recommendation adopted*, No. 20-cv-07466-HSG, 2021 WL 2531093 (N.D. Cal. June 21, 2021); *Cobbler Nev. LLC v. Inglesias*, No. 15-cv-05313-EDL, 2016 WL 8453643, at *4 (N.D. Cal. Dec. 16, 2016) ("Defendant's failure to respond to the suit, alongside Plaintiff's pleadings, suggests that Defendant's infringing activities will not cease absent judicial intervention.").

Third, Defendant will not suffer a hardship from an injunction that prohibits him from illegally copying and distributing Plaintiff's copyrighted work—i.e., conduct that he has no right to engage in. *See Strike 3 Holdings, LLC v. Andaya*, No. 21-cv-00760-VKD, 2021 WL 5123643, at *6 (N.D. Cal. Nov. 4, 2021) (granting permanent injunction and noting, "[n]othing in the proposed injunction prohibits [defendant] from lawfully accessing [plaintiff's] films"), *report and recommendation adopted*, No. 21-cv-00760-LHK, 2021 WL 5908421 (N.D. Cal. Dec. 14, 2021).

Fourth, the public interest will not be disserved by Plaintiff's requested injunctive

United States District Court
Northern District of California

relief. *See generally Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) ("The public interest in receiving copyrighted content for free is outweighed by the need to incentivize the creation of original works.").

Because all factors weigh in Plaintiff's favor, the Court recommends that a permanent injunction is appropriate here.

## IV. CONCLUSION

This case will be reassigned to a District Court Judge with a recommendation to:

1. Grant in part the requested default judgment against Defendant as to the DMCA claim, and deny in part as to the SCA claim;
2. Award Plaintiff $405 for the filing fee;
3. Issue a permanent injunction against Defendant, and those acting with him, from reproducing, distributing, publicly performing, or publicly displaying the October and November 2022 videos identified in the Complaint; and
4. Issue declaratory judgment, stating that Defendant had no lawful authorization to reproduce, rebroadcast, or publicly perform Plaintiff's audiovisual works, and that Defendant's use of those works does not constitute fair use.

Plaintiff is not seeking attorney's fees or any other damages.

Plaintiff must serve this Order on Defendant and file proof of service. Any party may object to this recommended disposition by filing specific written objections within fourteen days after being served with a copy of this Order. Fed. R. Civ. P. 72(b)(2).

**IT IS SO ORDERED.**

Dated: August 24, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge